1  ROBERT J. ODSON (Bar No. 162506)
   ADAM C. DOUPÉ (Bar No. 274486)
2  **SHUMENER, ODSON & OH LLP**
   550 South Hope Street, Suite 1050
3  Los Angeles, CA 90071-2678
   Tel: 213.344.4200
4  Fax: 213.330.4190

5  Attorneys for Plaintiff
   IGB U.S.A. RETAIL PORTFOLIO
6  FOUR, L.P.

FILED
NOV 17 2014
CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY:                    Deputy Clerk

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re DENISE FRANCISKA HOPKINS,<br><br>　　　　　Debtor. | CASE NO. 8:14-bk-14812-ES<br><br>Chapter 7<br><br>Adv. No. |
| IGB U.S.A. RETAIL PORTFOLIO FOUR, L.P., a Delaware limited partnership;<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>DENISE FRANCISKA HOPKINS, an individual; STEPHEN C. HOPKINS, an individual,<br><br>　　　　　Defendants. | **COMPLAINT TO DETERMINE DISCHARGEABILITY AND IN OBJECTION TO DISCHARGE**<br><br>[11 U.S.C. § 523(a)(4)] |

SHUMENER,
ODSON & OH LLP

COMPLAINT

Plaintiff IGB U.S.A. Retail Portfolio Four, L.P. ("**Plaintiff**") alleges as follows:

## JURISDICTION AND VENUE

1. On August 4, 2014, defendant and debtor Denise Franciska Hopkins ("**Denise Hopkins**") filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code ("**Bankruptcy Code**") in the United States Bankruptcy Court for the Central District of California.

2. On September 18, 2014, Denise Hopkins' duly-noticed meeting of creditors was held pursuant to Section 341(a) of the Bankruptcy Code.

3. As of the date of this Complaint, the Court has not granted Denise Hopkins a discharge.

4. The Complaint is timely because the date by which a Complaint objecting to Denise Hopkins' discharge or to determine dischargeability of a debt has not yet passed.

5. By this Complaint, Plaintiff commences an adversary proceeding in which Plaintiff seeks a determination as to the dischargeability of community debt owed to Plaintiff by Denise Hopkins' husband, defendant Stephen C. Hopkins ("**Steve Hopkins**"), under Bankruptcy Code § 523(a)(4).

6. The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334 and Bankruptcy Code § 523.

7. This case is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(K).

8. Venue in the United States Bankruptcy Court for the Central District of California is proper pursuant to 28 U.S.C. § 1409.

## PARTIES

9. Plaintiff is, and at all relevant times mentioned herein was, a Delaware limited partnership.

10. Plaintiff is informed and believes, and thereon alleges, that Denise Hopkins is an individual residing in Newport Beach, California.

11. Plaintiff is informed and believes, and thereon alleges, that Stephen Hopkins is an individual residing in Newport Beach, California.

## THE LIMITED PARTNERS AND PARTNERSHIPS

12. At all relevant times, California Retail Portfolio Fund GmbH & Co. KG ("**Limited Partner One**") was the ninety-nine (99) percent owner and limited partner of IGB Hopkins California Retail Portfolio One, L.P. ("**Partnership One**"), California Retail Portfolio Fund II GmbH & Co. KG ("**Limited Partner Two**") was the ninety-nine (99) percent owner and limited partner of IGB Hopkins California Retail Portfolio Two, L.P. ("**Partnership Two**"), and IGB California Retail Portfolio Fund III GmbH & Co. KG ("**Limited Partner Three**") was the ninety-nine (99) percent owner and limited partner of IGB Hopkins California Retail Portfolio Three, L.P. ("**Partnership Three**").

13. Hereinafter, "**Limited Partners**" shall refer to Limited Partner One, Limited Partner Two, and Limited Partner Three. Hereinafter, "**Partnerships**" shall refer to Partnership One, Partnership Two, and Partnership Three, inclusive.

## THE PURCHASE AGREEMENTS

14. Stephen Hopkins is the president and sole shareholder of Hopkins Real Estate Group ("**HREG**").

15. On or about February 5, 2005, HREG and Partnership One entered into a Purchase and Sale Agreement of Partnership & Limited Liability Company Interests ("**Fund One Purchase Agreement**"). Pursuant to the Fund One Purchase Agreement, HREG agreed to sell, and Partnership One agreed to purchase, interests in five (5) shopping centers for an aggregate purchase price of $5,512,500. In consideration, HREG promised to assign Partnership One interests in Executive Center Northridge, L.P., HW Valencia Village, LLC, HW Stevenson Ranch Shopping Center, LLC and HA Seco SWC II, which, in turn, owned shopping centers.

16. On or about January 27, 2006, HREG and Partnership Two entered into a Purchase and Sale Agreement of Limited Liability Company Interests ("**Fund Two Purchase Agreement**"). Pursuant to the Fund Two Purchase Agreement, HREG agreed to sell, and Partnership Two agreed to purchase, interests in two (2) shopping centers for an aggregate purchase price of $9,700,000. In consideration, HREG promised to assign

Partnership Two interests in HREG Southbay, LLC and HREG Fontana, LLC, which, in turn, purportedly owned the shopping centers.

17. On or about September 28, 2006, HREG, Hopkins and Partnership Three entered into an Amended and Restated Limited Liability Agreement of PSMHOP, LLC ("**Fund Three LLC Agreement**"). Pursuant to the Fund Three LLC Agreement, Partnership Three invested $17,600,000 in PSMHOP, LLC and obtained a 50% member interest in that entity, whose primary asset was the Palm Springs Mall in Palm Springs, California. The sole "Managing Member" of PSMHOP, LLC was Stephen Hopkins.

**STEPHEN HOPKINS ABUSES HIS POSITION OF POWER AND CONTROL**

18. Upon the closing of the Fund One Purchase Agreement, the Fund Two Purchase Agreement and the Fund Three LLC Agreement, Stephen Hopkins actively and unilaterally controlled the day-to-day management of each of the Partnerships. To this end, Stephen Hopkins unilaterally made partnership decisions, controlled partnership funds, and maintained partnership records. Stephen Hopkins controlled the Partnerships by virtue of his position as the "President" of the corporate general partner of the Partnerships' general partner. As such, Stephen Hopkins acquired fiduciary duties to both the Partnerships and Limited Partners.

19. Notwithstanding such fiduciary duties, and the fact that the Limited Partners owned 99% of the Partnerships, Stephen Hopkins proceeded to treat the Partnerships as his own personal bank accounts. Among other things, Stephen Hopkins routinely diverted millions of dollars in investor funds for purposes unrelated to the Partnerships (such as paying his personal expenses and HREG's operating expenses). These personal expenses included vacations at the Venetian Hotel in Las Vegas, birthday parties, donations to the "Glory Christian Church" and "Irvine Police Association," and a membership at the "Balboa Bay Club." Stephen Hopkins also stole $8 million of Limited Partners' funds under the guise of a purported "loan" to HREG, failed to provide material documents and information concerning the Partnerships notwithstanding repeated requests, and actively concealed material information concerning the Partnerships.

20. For example, although Limited Partner Two advanced over $6,000,000 to Partnership Two in early 2006 for the purpose of purchasing HREG Fontana, LLC's interest in the "Providence Pointe" shopping center in Fontana, California, Stephen Hopkins failed to close the "Providence Pointe" purchase and instead took investor money to fund his obligations unrelated to the Partnership Two. Stephen Hopkins then concealed his failure to purchase Providence Pointe and his diversion of partnership funds until January 2009.

21. In addition, without the knowledge or consent of Limited Partner Three, Stephen Hopkins took $8,000,000 of Limited Partner Three's investment in Partnership Three to make a purported "loan" to HREG, which was neither disclosed nor commercially reasonable. Stephen Hopkins and HREG then concealed the $8,000,000 loan from Limited Partner Three and refused, after specific requests, to provide copies of the documents evidencing the loan. The $8,000,000 that Stephen Hopkins and HREG diverted from Partnership Three was critical to Partnership Three's only investment, the Palm Springs Mall, which then defaulted upon its secured debt and was lost to foreclosure.

22. Finally, Stephen Hopkins actively concealed the fact that HREG failed to convey any of the interests allegedly purchased by Partnership One and Partnership Two from HREG. Although Stephen Hopkins induced Limited Partners to invest tens of millions of dollars to the Partnerships for the express purpose of purchasing interests in certain limited liability companies, Stephen Hopkins and HREG never assigned those interests to the Partnerships. Moreover, while Hopkins actively managed the Partnerships, Stephen Hopkins actively concealed the fact that he had failed to convey such interests. Indeed, while Stephen Hopkins purported to manage the Partnerships, and communicated information that would lead anyone to believe that the Partnerships actually held the interests, Stephen Hopkins concealed the fact that neither he nor his company HREG had conveyed anything to Partnership One or Partnership Two. In other words, based upon his fraud and concealment, Hopkins literally "sold the Brooklyn Bridge" to scores of

overseas investors – he took their money and gave them nothing in return.

23. Stephen Hopkins breached his fiduciary duties to Limited Partner One and Partnership One, and committed constructive fraud, by, among other things, (i) diverting partnership funds for purposes unrelated to the Partnerships, (ii) failing to provide material documents and information concerning Partnership One notwithstanding repeated requests, (iii) actively concealing material information concerning the Partnership including, without limitation, his failure to convey interests into Partnership One, and (iv) failing to fulfill his fiduciary duties to protect and preserve the parties' investments.

24. Stephen Hopkins breached his fiduciary duties to Limited Partner Two and Partnership Two, and committed constructive fraud, by, among other things, (i) inducing Limited Partner Two to invest over $6 million in Partnership Two for the express purpose of purchasing an interest in the "Providence Pointe" shopping center when Partnership Two never purchased any interest in that center, (ii) diverting over $6 million provided by Limited Partner Two that was earmarked for the "Providence Pointe" shopping center to fund his obligations unrelated to the Partnership Two, (iii) otherwise diverting partnership funds for purposes unrelated to Partnership Two, (iv) concealing his failure to purchase Providence Pointe and his diversion of partnership funds, (v) failing to provide material documents and information concerning the Partnership Two notwithstanding repeated requests, (vi) actively concealing material information concerning Partnership Two including, without limitation, his failure to convey interests into Partnership Two, and (vii) failing to fulfill his fiduciary duties to protect and preserve the parties' investments.

25. Stephen Hopkins breached his fiduciary duties to Limited Partner Three and Partnership Three, and committed constructive fraud, by, among other things, (i) diverting $8,000,000 of Limited Partner Three's investment in Partnership Three to make a bogus "loan" to HREG, which was neither authorized nor disclosed nor commercially reasonable, (ii) concealing the $8,000,000 "loan" from Limited Partner Three and refusing, after specific requests, to provide copies of the documents evidencing the so-called loan, (iii) otherwise diverting partnership funds for purposes unrelated to

Case 8:14-ap-01303-ES    Doc 1    Filed 11/17/14    Entered 11/17/14 15:45:56    Desc
Main Document    Page 7 of 13

Partnership Three, (iv) failing to provide material documents and information concerning Partnership Three notwithstanding repeated requests, (vi) actively concealing material information concerning Partnership Three; and (vii) failing to fulfill his fiduciary duties to protect and preserve the parties' investments.

## THE ARBITRATION

26. On or about September 1, 2009, Limited Partners served a demand for arbitration upon Stephen Hopkins and HREG, and filed the demand with JAMS ("**Demand**") initiating the arbitration known as JAMS Reference No. 1220040338 ("**Arbitration**"). In the Demand, Limited Partners asserted claims against Stephen Hopkins for breach of fiduciary duty and constructive fraud.

27. Attached hereto as Exhibit "A" and incorporated by reference herein is a true and correct copy of the Demand.

28. Paragraph 30 of the Demand states as follows (with emphasis added):

> **Hopkins breached his contractual and fiduciary duties to Limited Partner One and Partnership One, and committed constructive fraud**, by, among other things, (i) diverting partnership funds for purposes unrelated to the Partnerships, (ii) failing to provide material documents and information concerning the Partnership One notwithstanding repeated requests, (iii) actively concealing material information concerning the Partnership including, without limitation, his and HREG's failure to convey interests into Partnership One, and (iv) failing to fulfill his fiduciary duties to protect and preserve the parties' investments.

29. Paragraph 32 of the Demand states as follows (with emphasis added):

> **Hopkins breached his contractual and fiduciary duties to Limited Partner Two and Partnership Two, and committed constructive fraud**, by, among other things, (i) inducing Limited Partner Two to invest over $6 million in Partnership Two for the express purpose of purchasing an interest in the "Providence Pointe" shopping center when Partnership Two never purchased any interest in that center, (ii) diverting millions provided by Limited Partner Two that was earmarked for the "Providence Pointe" shopping center to fund his obligations unrelated to the Partnership Two, (iii) otherwise diverting partnership funds for purposes unrelated to Partnership Two, (iv) concealing his failure to purchase Providence Pointe and his diversion of partnership funds, (v) failing to provide material documents and information concerning the Partnership Two notwithstanding repeated

SHUMENER, ODSON & OH LLP
-6-
COMPLAINT

requests, (vi) actively concealing material information concerning Partnership Two including, without limitation, his and HREG's failure to convey interests into Partnership Two, and (vii) failing to fulfill his fiduciary duties to protect and preserve the parties' investments.

30. Paragraph 34 of the Demand states as follows (with emphasis added):

**<u>Hopkins breached his contractual and fiduciary duties to Limited Partner Three and Partnership Three, and committed constructive fraud</u>**, by, among other things, (i) diverting $8,000,000 of Limited Partner Three's investment in Partnership Three to make a purported "loan" to HREG, which was neither disclosed nor commercially reasonable, (ii) concealing the $8,000,000 loan from Limited Partner Three and refusing, after specific requests, to provide copies of the documents evidencing the loan, (iii) otherwise diverting partnership funds for purposes unrelated to Partnership Three, (iv) failing to provide material documents and information concerning the Partnership Three notwithstanding repeated requests, (vi) actively concealing material information concerning Partnership Three; and (vii) failing to fulfill his fiduciary duties to protect and preserve the parties' investments.

31. On or about March 19, 2010, HREG served a counter-demand for arbitration upon Plaintiff, and filed the counter-demand with JAMS ("**Counter-Demand**").

32. Justice Steven J. Stone (ret.) ("**Arbitrator**") was selected by the parties to conduct the Arbitration.

33. While the Arbitration was pending, Plaintiff, Limited Partners, Stephen Hopkins, and HREG entered into a Settlement Agreement and Mutual Release ("**Settlement Agreement**") dated as of March 1, 2011.

34. As part of the Settlement Agreement, Plaintiff, Limited Partners, Stephen Hopkins, and HREG stipulated to (i) the entry of an arbitration award in the Arbitration ("**Award**") and (ii) judgment thereon against Stephen Hopkins (and HREG) in the amount of $10,000,000. True and correct copies of the Stipulation for Entry of Arbitration Award and the Stipulation for Entry of Judgment are attached hereto as Exhibits "B" and "C" respectively and incorporated by reference herein.

35. The Stipulation for Entry of Arbitration Award states, in pertinent part, as

follows:

> This stipulation for entry of arbitration award ("**Stipulation**") is hereby entered into by and between petitioners California Retail Portfolio Fund GmbH & Co. KG ("**Limited Partner One**"), California Retail Portfolio Fund II GmbH & Co. KG ("**Limited Partner Two**"), IGB California Retail Portfolio Fund III GmbH & Co. KG ("**Limited Partner Three**"), and IGB U.S.A. Retail Portfolio Four, L.P. ("**Limited Partner Four**") (collectively, "**Limited Partners**"), on the one hand, and respondents Stephen Hopkins ("**Hopkins**") and Hopkins Real Estate Group ("**HREG**") (collectively, "**Hopkins Parties**"), on the other hand, <u>as to the claims and counterclaims at issues in the arbitration known as JAMS Reference No. 1220040338</u> ("**Arbitration**"). It is hereby stipulated as follows:
> . . . .
>
> Whereas, Limited Partners and Hopkins Parties entered into a Settlement Agreement, dated as of March 1, 2011 ("**Settlement Agreement**") that required the Hopkins Parties to, among other things, <u>stipulate to entry of an arbitration award in this Arbitration ("**Arbitration Award**") and a judgment thereon against the Hopkins Parties in the amount of $10,000,000.</u>
>
> NOW THEREFORE, IT IS HEREBY STIPULATED by and between Limited Partners and Hopkins Parties that:
>
> 1. The Arbitration Award attached hereto as Exhibit "A" be issued by Justice Steven J. Stone (Ret.) as the final arbitration award in this Arbitration.
>
> 2. The Hopkins Parties are jointly and severally liable to Limited Partners for the full amount of damages contained in the Arbitration Award.

(Emphasis added).

36. Thereafter, on May 31, 2011, and in accordance with the Stipulation for Entry of Arbitration Award, the Arbitrator rendered a final Award in favor of Plaintiff and Limited Partners:

> Upon stipulation of the parties to this Arbitration, I hereby issue the following award ("**Award**") in favor of Limited Partners:
>
> 1. The Hopkins Parties shall take nothing on the claims against Limited Partner Four contained in the Counter-Demand.
>
> 2. Limited Partners are hereby awarded damages against the Hopkins Parties in the amount of $10,000,000.

> 3. The Hopkins Parties are jointly and severally liable to Limited Partners for the full amount of the damages contained in this Award.
>
> **This Award disposes of all claims and counterclaims submitted in this Arbitration.**

(Emphasis added)

37. Thus, by stipulation of the parties, the Arbitrator determined all issues submitted to him by Plaintiff and Limited Partners, including claims of breach of fiduciary duty and constructive fraud against Stephen Hopkins personally, in favor of Limited Partners and Plaintiff. Likewise, the Arbitrator found all claims by Stephen Hopkins and HREG to be meritless.

38. The Award further provides, among other things, that Stephen Hopkins and HREG shall take nothing by way of their Counter-Demand and that Stephen Hopkins and HREG shall pay Plaintiff and Limited Partners $10,000,000 in damages.

39. A true and correct copy of the Award is attached hereto as Exhibit "D" and incorporated by reference herein.

40. The Arbitrator served a signed copy of the Award on Respondents on May 31, 2011.

## THE STATE COURT ENTERS JUDGMENT

41. Pursuant to the Stipulation for Entry of Judgment, Stephen Hopkins agreed, in writing, that Plaintiff and Limited Partners could, upon *ex parte* application after Stephen Hopkins' breach of the Settlement Agreement, have Judgment entered against him in the amount of $10,000,000. Stephen Hopkins also waived (i) "any and all rights to appeal the Judgment"; (ii) "any and all rights or defenses that may be available to" Stephen Hopkins to challenge the validity or confirmation of the Award or the entry or enforceability of the Judgment; and (iii) "any and all rights or defenses arising from any statute of limitations applicable to (a) the claims embraced by the Arbitration Award, (b) the confirmation and enforcement of the Arbitration Award, and (c) the entry or enforcement of the Judgment."

42. On July 9, 2012, the Hon. Mark V. Mooney of the Los Angeles County Superior Court signed the stipulated Judgment awarding $10 million in damages to Plaintiff and Limited Partners. A true and correct copy of the Judgment is attached hereto as Exhibit "E" and incorporated by reference herein.

43. For the next two (2) years, Plaintiff and Limited Partners sought to collect the amounts owed them under the Judgment. To that end, Plaintiff and Limited Partners (i) recorded abstracts of judgment in Los Angeles, Orange, Riverside, and San Bernardino counties, (ii) filed a UCC Judgment lien with the California Secretary of State's office, (iii) obtained a charging order for HREG's membership interest in an entity known as ECN Member, LLC, and (iv) conducted judgment debtor examinations of Stephen and Denise Hopkins.

44. Despite Plaintiff's and Limited Partners' collection efforts, Stephen Hopkins (and HREG) have not paid the amounts outstanding under the Judgment.

45. On or around April 29, 2014, Limited Partners assigned their right, title, and interest in the Judgment to Plaintiff.

### DENISE HOPKINS FILES FOR BANKRUPTCY

46. On August 4, 2014, Denise Hopkins filed a Voluntary Petition under Chapter 7 of the Bankruptcy Code. Although Stephen Hopkins did not file a bankruptcy petition, all community property becomes property of the estate even if only one spouse files bankruptcy. 11 U.S.C. § 541(a)(2). In addition, "community claims" against Stephen Hopkins are treated as claims against the community property in the debtor spouse's bankruptcy. 11 U.S.C. § 101(10)(C). Plaintiff's Judgment is a "community claim."

47. If the Court grants Denise Hopkins a discharge under section 524(a)(3) of the Bankruptcy Code, then Plaintiff will be unable to collect the unpaid amounts owed under its Judgment from Denise Hopkins' and Stephen Hopkins' community assets.

48. Indeed, Denise Hopkins' bankruptcy filing is calculated to prevent Plaintiff from collecting amounts owed it under the Judgment.

49. Plaintiff is informed and believes and thereon alleges, that after Denise Hopkins obtains a bankruptcy discharge, Stephen Hopkins will cause an entity known as Kirin Hopkins International, LLC to sell certain real property in Merced, California, and, then pay himself a distribution of the sale proceeds through a membership interest that he holds in an entity known as THG & Associates, LLC. THG & Associates, LLC is a member of Kirin Hopkins International, LLC.

50. Thus, in order to prevent Denise Hopkins and Stephen Hopkins from shielding their community assets from Plaintiff's collection efforts, Plaintiff seeks a determination that the Judgment is not a dischargeable debt under section 523(a)(4) of the Bankruptcy Code.

## FIRST CLAIM FOR RELIEF

**(Nondischargeability Against Defendant And Debtor Denise F. Hopkins And Defendant Stephen C. Hopkins Pursuant To 11 U.S.C. § 523(a)(4))**

51. Plaintiff realleges and incorporates herein by reference paragraphs 1 through 50, as if fully set forth herein.

52. Even if only one spouse files for bankruptcy, all community property becomes property of the estate. 11 U.S.C. § 541(a)(2). In addition, "community claims" are treated as claims against the community property in the debtor spouse's bankruptcy. 11 U.S.C. § 101(10)(C). Although only Denise Hopkins has filed for bankruptcy, Plaintiff's Judgment is a "community claim" against the community property of Denise and Stephen Hopkins because it arose while Denise and Stephen Hopkins were married.

53. Pursuant to section 523(a)(4) of the Bankruptcy Code, a discharge does not discharge a debtor from any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."

54. As shown above, Plaintiff's Judgment arises from an Arbitration Award that awarded $10 million dollars in damages as a result of Stephen Hopkins' constructive fraud and breach of fiduciary duty.

55. Thus, based upon the foregoing, Plaintiff requests that the debt owed to

Plaintiff under the Judgment be deemed not dischargeable in Denise Hopkins' bankruptcy.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

1. For judgment against Denise Hopkins and Stephen Hopkins determining that the debt owed to Plaintiff is not dischargeable;

2. For reasonable attorneys' fees and costs;

3. For costs of suit incurred herein; and

4. For such other and further relief as the Court may deem just and proper.

Dated: November 17, 2014

        SHUMENER, ODSON & OH LLP

        By: _____
        ROBERT J. ODSON
        ADAM C. DOUPÉ
        Attorneys for Plaintiff
        IGB U.S.A. RETAIL
        PORTFOLIO FOUR, L.P.